USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _1/27/17_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT WILLIAMS,                                      :
                              Plaintiff,             :        **REPORT AND**
                                                     :        **RECOMMENDATION**
                 -v-                                 :
                                                     :        15-CV-4715 (PGG) (JLC)
VICTORIA'S SECRET,                                    :
                              Defendant.             :
------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Paul G. Gardephe, United States District Judge:**

*Pro se* plaintiff Robert Williams brings this action pursuant to Title VII of the

Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act of

1967 ("ADEA"); 42 U.S.C. § 1981 ("Section 1981"); N.Y. Exec. Law § § 290 *et seq.*

("NYSHRL"); and N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). Defendant

Victoria's Secret Stores, LLC ("VSS")[1] has moved to dismiss the Amended

Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for

failure to state a claim upon which relief may be granted, arguing that Williams has

failed to plead facts sufficient to plausibly infer age or race discrimination. In the

alternative, VSS has moved for summary judgment pursuant to Rule 56, contending

that Williams' claims fail because he was an independent contractor and not an

employee of VSS. For the reasons set forth below, I recommend that the motion to

dismiss be granted.

---

[1] Williams identified the defendant simply as "Victoria's Secret" in the caption of his
Amended Complaint.

# I.   BACKGROUND

## A.   Factual Background

### 1.   Williams' Allegations

For purposes of this motion, the factual allegations in Williams' Amended Complaint are accepted as true unless otherwise noted. Williams is an African-American male, and is more than 40 years old. Amended Complaint ("Am. Compl."), Dkt. No. 5, ¶ 9. On February 8, 2014, Williams was hired by Elite Investigations Inc. ("Elite"), with the "intention of being assigned to the client and joint employer Victoria's Secret," with a work schedule set by VSS. *Id.* The next day, Williams was interviewed by VSS's Loss Prevention Manager, "inron," [sic] (hereinafter "Inron"), who he alleges was of Middle Eastern descent. *Id.* ¶ 10. Inron "hired" Williams for the position of Shift Supervisor and explained the role to him. *Id.* ¶¶ 10–11.

VSS did not provide Williams with a designated office, and he was told to use the break room during "downtime" or when he did not need to be on the sales floor. *Id.* ¶ 12. Williams "was the only individual in leadership who had no adequate office space or cubicle." *Id.* ¶ 13. While he worked at VSS, Williams "did not have any disciplinary write ups, verbal warnings or poor performance reviews," and was therefore "qualified for the position." *Id.* ¶¶ 15–16.

Williams alleges that in March 2014, Inron told him "to not present or reflect a pattern of security protocol in an ongoing effort to prevent employee and/or customer theft." *Id.* ¶ 17. Williams followed that instruction, which "is a standard

2

in the security industry." *Id.* ¶¶ 17–18.  The only other comments that Williams cites to in his Amended Complaint were that Inron "repeatedly" stated that he was 36, almost 40, he was "getting old," and the workforce was "dominated by 20–29 year old individuals." *Id.* ¶ 43.

On April 17, 2014, Williams arrived at work and proceeded to the break room. *Id.* ¶¶ 22–23.  While in the break room, Inron entered along with the store manager and assistant store manager. *Id.* ¶ 24.  Inron "made eye contact" with Williams, but "did not acknowledge that [he] was engaged in any misconduct or . . . advise [him] that the owner of Victoria's Secret and his executive team [were] upstairs doing their annual visit." *Id.* ¶ 25.  VSS did not give Williams any prior notice about the owner's visit. *Id.* ¶ 26.  Inron and the management team left the break room after several minutes, and thereafter Williams left for the sales area to relieve a security officer for a meal break. *Id.* ¶ 28.

A few feet from the security officer, Williams was "ambushed loudly in an unprofessional manner" by Inron in front of the store manager and assistant store manager, and accused of "hanging out in the break room." *Id.* ¶ 29.  Inron "never inquired [as to] the reason why [Williams] was in the [break room]." *Id.* ¶ 31.  Inron spoke to Williams in front of customers, the owner of VSS, and his executive team. *Id.* ¶ 30.  The store manager intervened to say that they could discuss the matter later. *Id.* ¶ 33.  "It took everything in [Williams] not to say anything in an unprofessional manner or walk off the job." *Id.* ¶ 32.

Sometime in the next few hours, Inron allegedly contacted Elite and

3

"informed them he did not want [Williams] back." *Id.* ¶ 36. Williams did not find

out about his dismissal from VSS until he called Elite several hours after the

incident, on an unrelated matter, and a dispatcher from Elite asked Williams if he

knew that it was his last day at VSS. *Id.* ¶¶ 39–40. Williams told the dispatcher

that he was leaving immediately, due to his mental anguish and humiliation, which

rendered him unable to perform his duties. *Id.* ¶ 41. Williams was never given the

opportunity to discuss the incident with VSS. *Id.* ¶¶ 34, 37. Williams notified Elite

about VSS's conduct that same day through a telephone conversation and by mail.

*Id.* ¶ 20. Williams alleges that VSS's decision to "terminate" him was contrary to its

"internal company policy, standards and disciplinary rubric," though he does not

provide any examples of the policies that were purportedly violated. *Id.* ¶ 38. Inron

was never disciplined for "undermining [Williams'] duties and provoking" him. *Id.*

¶ 45.

After he was dismissed, Williams contends that VSS continued to look for

candidates for his position, which was eventually staffed by someone under the age

of 40. He concludes his narrative by alleging, "upon information and belief, [that]

[Inron] considered this an opportunity to reject [Williams] because he was over 40

years old." *Id.* ¶¶ 42–44.

### 2. Elite's Relationship to VSS's Parent Company

In support of its alternative motion for summary judgment, VSS provided a

copy of a contract between Elite and Limited Brands, Inc. ("LBI"). Defendant's

Statement of Material Facts ("Def. R. 56.1"), Dkt. No. 18, Ex. A. VSS explained that

4

LBI is a parent-company of VSS, and LBI contracted with Elite for security services at VSS. Def. R. 56.1, ¶¶ 3–5. The contract between LBI and Elite describes Elite as "an independent contractor" of LBI. *Id.* ¶ 8. It further provides that "Elite will determine, in its sole discretion, the manner and means by which the Services are accomplished subject to [LBI's] reasonable instructions"; that Elite will provide the "necessary equipment, tools, supplies and other items necessary to perform Services"; and that Elite will pay "all necessary employment taxes . . . [and] will provide for Workers' Compensation, unemployment, and all other coverage required under applicable local, state or federal law." *Id.* ¶¶ 9–10, 12.

## B.    Procedural History

Williams filed his discrimination claims with the Equal Employment Opportunity Commission, which issued a "Dismissal and Notice of Rights" letter on March 19, 2015. Complaint ("Compl."), Dkt. No. 2, at 7. On June 17, 2015, Williams filed a complaint against VSS in this Court. On August 25, 2015, then-Chief Judge Loretta A. Preska directed Williams to submit an amended complaint within 60 days because his "allegations are insufficient to state plausible federal employment discrimination claims." Order to Amend, dated August 25, 2015, Dkt. No. 4, at 4. Specifically, the Order to Amend directed Williams to disclose his race and "to submit an amended complaint in which he provides facts from which an inference can be made that he was discriminated against because of his race and age." *Id.*

On October 5, 2015, Williams filed his Amended Complaint, which asserts

5

five causes of action against VSS: 1) VSS discriminated against him in his employment on the basis of his race in violation of Title VII, 42 U.S.C. § 2000e, Am. Compl., ¶¶ 48–55; 2) VSS discriminated against him on the basis of his age in violation of the ADEA, 29 U.S.C. §§ 621–34, by replacing him with a "younger individual outside of the protected class," Am. Compl., ¶¶ 56–63; 3) VSS discriminated against him on the basis of his age in violation of 42 U.S.C. § 1981, Am. Compl., ¶¶ 64–67; 4) VSS discriminated against him on the basis of his age in violation of NYSHRL, N.Y. Exec. Law § 290 *et seq.*, Am. Compl., ¶¶ 68–71; and 5) VSS discriminated against him on the basis of his age in violation of the NYCHRL, N.Y.C. Admin. Code §§ 8-101 *et seq.*, Am. Compl., ¶¶ 72–75.

On April 4, 2016, VSS moved to dismiss the Amended Complaint, or in the alternative, for summary judgment. Motion to Dismiss, Dkt. No. 15. First, VSS argued it was entitled to judgment as a matter of law because VSS was not Williams' employer, and therefore he was not entitled to the protections of Title VII, the ADEA, NYSHRL, or NYCHRL. Defendant's Memorandum of Law in Support of Motion to Dismiss or Summary Judgment ("Def. Mem."), Dkt. No. 16, at 8–9. VSS next argued that Williams' claim under Section 1981 should be dismissed because the statute protects against discrimination on the basis of race, but not age. *Id.* at 10–11. Finally, VSS argued that Williams' remaining claims should be dismissed because he failed to plead sufficient facts to plausibly give rise to an inference of discrimination on the basis of age or race. *Id.* at 11–12.

Williams responded to VSS's motion on May 9, 2016. Plaintiff's

6

Memorandum of Law in Opposition to Motion to Dismiss ("Pl. Mem."), Dkt. No. 27.

Addressing VSS's motion for summary judgment, Williams countered that Elite and

VSS were actually joint employers. *Id.* at 5. In responding to VSS's motion to

dismiss, Williams reasoned that the Court's approval of his *in forma pauperis*

status demonstrated that his complaint met the *Iqbal* and *Twombly* pleading

requirements, because the Court is obligated to dismiss any portion of a complaint

that "fails to state a claim upon which relief can be granted." *Id.* at 1, 4. Williams

then contended that he only needed to allege facts sufficient to provide "at least

minimal support for the proposition that the employer was motivated by

discriminatory intent," and argued that he had met that standard. *Id.* at 6–7

(quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)).

　　VSS replied through papers dated May 23, 2016. Def. Reply, Dkt. No. 30.

The motion was then referred to me on October 20, 2016 for a report and

recommendation. Order of Reference, dated Oct. 20, 2016, Dkt. No. 33.

## II. DISCUSSION

### A. Introduction

　　VSS has moved for summary judgment under Rule 56 of the Federal Rules of

Civil Procedure on the ground that it cannot be held liable for Williams' claims of

discrimination because it was not Williams' employer. In support of its motion, it

has proffered the contract between LBI, a parent-company of VSS, and Elite, as well

as an affidavit of an assistant vice president in LBI's legal department. For the

reasons discussed below, the Court concludes that there are genuine disputes of fact

7

as to whether VSS was Williams' employer, and the record has not been fully

developed on that issue. However, the Court further concludes that it does not need

to reach this question, because, even assuming that VSS was his employer,

Williams has not pleaded facts from which one can plausibly infer age or race

discrimination.

## B.   Whether Williams Was an Independent Contractor or an Employee Remains a Disputed Issue That Cannot Be Resolved on the Present Record

VSS seeks summary judgment on Williams' claims under Title VII, the

ADEA, NYSHRL, and NYCHRL, on the basis that Williams was an independent

contractor and not an employee of VSS. Def. Mem., at 8–9.[2] Title VII, the ADEA,

and the NYSHRL apply only to "employees." *See, e.g.*, *Brown v. Daikin Am. Inc.*,

756 F.3d 219, 226 (2d Cir. 2014) (NYSHRL); *Salamon v. Our Lady of Victory Hosp.*,

514 F.3d 217, 226–27 (2d Cir. 2008), *as amended* (Apr. 22, 2008) (Title VII);

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 509 (2d Cir. 1994) (ADEA);

*Liotard v. Fedex Corp.*, No. 14-CV-2083 (NSR), 2016 WL 1071034, at *4–7 (S.D.N.Y.

Mar. 17, 2016) (Title VII and ADEA). The NYCHRL covers only "natural persons

---

[2] Given the recommended disposition here, the Court does not set forth the well-known summary judgment standards, other than to note that a party may seek summary judgment under Federal Rule of Civil Procedure 56, which "allows a party to seek a judgment before trial on the grounds that all facts relevant to a claim(s) or defense(s) are undisputed and that those facts entitle the party to the judgment sought." *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

employed as independent contractors." N.Y.C. Admin. Code § 8-102(5).[3] "Whether

a hired person is an employee under the common law of agency depends on a fact-

specific analysis of thirteen factors articulated by the Supreme Court in *Community*

*for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989) . . . ." *Salamon*, 514 F.3d at

226; *see also Echevarria v. Insight Med., P.C.*, 72 F. Supp. 3d 442, 457 (S.D.N.Y.

2014). The factors are described as follows:

> In determining whether a hired party is an employee
> under the general common law of agency, we consider the
> hiring party's right to control the manner and means by
> which the product is accomplished. Among the other
> factors relevant to this inquiry are the skill required; the
> source of the instrumentalities and tools; the location of
> the work; the duration of the relationship between the
> parties; whether the hiring party has the right to assign
> additional projects to the hired party; the extent of the
> hired party's discretion over when and how long to work;
> the method of payment; the hired party's role in hiring
> and paying assistants; whether the work is part of the
> regular business of the hiring party; whether the hiring
> party is in business; the provision of employee benefits;
> and the tax treatment of the hired party.

*Reid*, 490 U.S. at 751–52 (footnotes omitted).

"No one of these factors is determinative," *id.*, and "in determining whether a

worker is an employee . . . courts ordinarily should place particular weight on the

extent to which the hiring party controls the manner and means by which the

---

[3] Williams was employed by Elite, and Elite was the independent contractor to VSS.
Def. R. 56.1, ¶¶ 3–5. If Williams was found to be an independent contractor under
the ADEA or NYSHRL, he would also not be protected by the NYCHRL, because it
was Elite that had the employment relationship with VSS and Elite was not a
"natural person." *See, e.g., Hopper v. Banana Republic, LLC*, No. 07-CV-8526
(WHP), 2008 WL 490613, at *3 (S.D.N.Y. Feb. 25, 2008) (NYCHRL "does not apply
to independent contractors employed by corporations") (citing *O'Neill v. Atl. Security
Guards, Inc*, 250 A.D.2d 493, 493 (1st Dep't 1998)).

worker completes [his] assigned tasks, rather than on how [he] is treated for tax purposes or whether [he] receives benefits." *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F.3d 111, 112 (2d Cir. 2000); *see also Salamon*, 514 F.3d at 226–27. Further, "in anti-discrimination cases, 'courts *should not* ordinarily place extra weight on the benefits and tax treatment factors and *should* instead place special weight on the first factor.'" *Cosgriff v. Valdese Weavers LLC*, No. 09-CV-5234 (KMW) (MHD), 2012 WL 1071497, at *5 (S.D.N.Y. Mar. 30, 2012) (quoting *Eisenberg*, 237 F.3d at 117) (internal alterations omitted).

In its motion for summary judgment, VSS did not apply the *Reid* factors. Instead, it contended that the contract between LBI and Elite 1) identifies the relationship between the parties as that of employer and independent contractor, Def. Mem., at 8; 2) stipulates that "Elite's own employees will carry out its work under the contract," *id.* at 9; and 3) provides that Elite was responsible for payroll taxes and employment-related benefits of its employees. *Id.* Thus, VSS's entire argument rests on language found in the employment contract between LBI and Elite.

VSS's first point lacks merit, because "the right to be treated in a non-discriminatory manner does not depend on the terms of any particular contract." *Eisenberg,* 237 F.3d at 116. The fact that the contract identified Elite as an independent contractor does not replace a court's analysis of the *Reid* factors because "employment contracts, no matter what the circumstances that justify their execution or what the terms, may not be used to waive protections granted to an

individual under [Title VII] or any other act of Congress." *Spirides v. Reinhardt,*
613 F.2d 826, 832 (D.C. Cir. 1979) (quoted in *Eisenberg,* 237 F.3d at 117); *see also*
*Deshpande v. Medisys Health Network, Inc.*, No. 07-CV-375 (KAM) (VVP), 2010 WL
1539745, at *10 (E.D.N.Y. Apr. 16, 2010) ("courts in this circuit look beyond mere
labels in assessing whether a defendant is an employer and apply the common law
of agency to determine whether an individual is an independent contractor or an
employee") (internal quotation marks and citation omitted), *aff'd,* 423 F. App'x 31
(2d Cir. 2011).

The Court views the other two factors discussed by VSS through this same
lens of skepticism for employment contracts. VSS offered no independent evidence
of the nature of the employment relationship between VSS and Williams beyond the
contractual terms. VSS correctly observed that the contract provides that "Elite
will determine, in its sole discretion, the manner and means by which the services
are accomplished subject to [LBI's] reasonable instructions." Def. R. 56.1, ¶ 9.
Williams has not contested this fact. However, the contractual language alone does
not address the extent to which VSS or Elite actually controlled the manner and
means by which Williams completed his assignments. In fact, Williams alleges that
VSS set his schedule, and Inron directed him regarding security protocol. Am.
Compl., ¶¶ 9, 17. VSS did not dispute these allegations, and has offered no
alternative evidence of Elite's independent control over him.

A party's control over the manner and means by which services are rendered
is a much more significant factor to the *Reid* analysis than the final factor that VSS

11

articulates, that is, Elite's responsibility for Williams' payroll taxes and
employment benefits. *Cosgriff*, 2012 WL 1071497, at *4–5. Although VSS has cited
cases where failure to pay payroll taxes or provide employment benefits was
considered "highly indicative" of an independent contractor relationship, those cases
considered that factor among the other applicable *Reid* factors—not as a single
dispositive factor. *Aymes v. Bonelli*, 980 F.2d 857, 862 (2d Cir. 1992); *see Peck v.
Democrat & Chronicle/Gannett Newspapers*, 113 F. Supp. 2d 434, 440 (W.D.N.Y.
2000). As "[n]o one of these factors is determinative," *Reid*, 490 U.S. at 752, VSS's
failure to analyze all applicable factors is some indication that there remain
material disputes of fact as to Williams' relationship with VSS.

Williams has also argued that there is a material factual dispute as to
whether VSS and Elite's relationship should be analyzed under the joint employer
doctrine. In his response to VSS's motion, Williams explained that he had alleged
in his complaint that "he interviewed for [the] position and was hired directly by
[VSS]," "[VSS] informed [him] of his role and rules," and "he was disciplined and
terminated by [VSS]." Pl. Mem., at 5. In its reply, VSS did not refute these
allegations, and merely restated its position that VSS did not employ Williams.

A joint employer arrangement exists where "an employee, formally employed
by one entity, who has been assigned to work in circumstances that justify the
conclusion that the employee is at the same time constructively employed by
another entity, may impose liability for violations of employment law on the
constructive employer, on the theory that this other entity is the employee's joint

employer." *Arculeo v. On-Site Sales & Mktg.*, LLC, 425 F.3d 193, 198 (2d Cir. 2005); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217 (RJS) (JLC), 2013 WL 6231615, at *13–16 (S.D.N.Y. Dec. 2, 2013) ("The joint employer doctrine has been applied to temporary employment or staffing agencies and their client entities . . . .") (internal quotation marks omitted), *aff'd sub nom., Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). "A determination that a third-party entity is acting as joint employer requires 'sufficient evidence of immediate control over the employees.'" *Liotard*, 2016 WL 1071034, at *4 (quoting *Clinton's Ditch Co-op Co. v. NLRB*, 778 F.2d 132, 138 (2d Cir. 1985)). To determine whether an employer has "immediate control," the Second Circuit looks to five factors: "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *AT & T v. NLRB,* 67 F.3d 446, 451 (2d Cir. 1995).

As to the first factor, Williams alleges he was "hired" by VSS the day after he was hired by Elite. Am. Compl., ¶¶ 9–10. He further alleges that Inron determined that he would no longer work at VSS. *Id.* ¶ 36. "[A]n entity's ability to request a plaintiff be transferred is relevant and weighs in favor of a joint employer finding in some circumstances . . . ." *Liotard*, 2016 WL 1071034, at *5. Additionally, there is no record of Williams' employment by Elite either before or after his work at VSS. Further, there are no allegations about the second factor, regarding who administered disciplinary procedures, and the only allegation relevant to the third

13

factor is that the contractual agreement states that Elite would provide

employment benefits. Def. R. 56.1, ¶ 12. Finally, as previously mentioned,

Williams alleges that VSS supervised him regarding security protocols. *See* Am.

Compl., ¶ 17. Although at least two factors weigh in favor of VSS being Williams'

joint employer, they would likely be insufficient to demonstrate that there are no

material disputes of fact because of the conclusory nature of the pleadings. *See*

*Conde v. Sisley Cosmetics USA, Inc.*, No. 11-CV-4010 (RJS), 2012 WL 1883508, at

*3–4 (S.D.N.Y. May 23, 2012) (dismissing plaintiff's joint employer claims, because

"[f]ar more than a basic level of oversight is required to plausibly allege a joint

employment relationship").

Despite Williams' conclusory allegations in support of his claim that VSS and

Elite were joint employers, VSS bears the burden to demonstrate that it is entitled

to judgment as a matter of law. When evaluating whether there are genuine

disputes of material fact in adjudicating a summary judgment motion, a court must

"'resolve all ambiguities and draw all permissible factual inferences in favor of the

party against whom summary judgment is sought.'" *Hedlund v. N.Y.C. Transit*

*Auth.,* 507 F. App'x 35, 36 (2d Cir. 2013) (quoting *Terry v. Ashcroft,* 336 F.3d 128,

137 (2d Cir. 2003)). Here, VSS has tried to invoke contractual language to

demonstrate that Williams was an independent contractor, but has not provided

any contextual evidence to establish that Williams was not one of its employees.

Further, VSS has ignored Williams' contention that VSS and Elite were joint

14

employers. VSS's contract-based argument, standing alone, amounts to the kind of legal analysis that courts are directed to avoid in cases such as *Reid* and *Eisenberg*.

In sum, VSS has not demonstrated on the present record that it is entitled to judgment as a matter of law regarding its employment relationship with Williams. However, the Court ultimately need not resolve this issue because, even if it is assumed that VSS was his employer, Williams has failed to plead facts sufficient to plausibly infer age or race discrimination. That failure will be discussed in the next two sections of this Report and Recommendation.

### C.    Standard Under Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Accordingly, Williams must plead facts in his Amended Complaint that "state a claim to relief that is plausible on its face" to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This facial plausibility standard requires that a plaintiff plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a 12(b)(6) motion, the Court must accept all factual allegations in the complaint as true, *id.*, and should interpret those allegations by drawing all reasonable inferences in favor of a plaintiff. *See Chepak v. Metro. Hosp.*, 555 F. App'x 74, 76 (2d Cir. 2014) (citing *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)). Nevertheless, this standard still requires a plaintiff's pleadings to sufficiently

15

"nudge[] [his] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Although "detailed factual allegations" are not required, the standard under Rule 12(b)(6) demands that a plaintiff set forth facts that go beyond "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" to support an inference of plausibility. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). The Court's assessment of a pleading's sufficiency and the plausibility of claims under Rule 12(b)(6) "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Notably, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Such "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (internal quotation marks omitted); *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011); *Nwozuzu v. United States*, No. 14-CV-8589 (LGS), 2015 WL 4865772, at *3 (S.D.N.Y. Aug. 12, 2015).

At the same time, where a plaintiff is proceeding without representation, the Court is required to "construe [his Complaint] broadly and interpret it to raise the strongest arguments it suggests." *Sharpe v. Conole,* 386 F.3d 482, 484 (2d Cir. 2004) (citation omitted). This standard is particularly applicable when a plaintiff is

16

alleging employment discrimination, because "a court is obliged to construe [a *pro se* plaintiff's] pleadings liberally, particularly when they allege civil rights violations." *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004) (citations omitted). Nevertheless, "a *pro se* litigant [is] bound by the same rules of law . . . as those [litigants] represented by counsel." *Fertig v. HRA Med. Assistance Program,* No. 10-CV-8191 (RPP), 2011 WL 1795235, at \*4 (S.D.N.Y. May 6, 2011) (internal quotation marks and citation omitted). "As the Second Circuit has repeatedly held, 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Bender v. City of New York,* No. 09-CV-3286 (BSJ), 2011 WL 4344203, at \*1 (S.D.N.Y. Sept. 14, 2011) (quoting *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987)). "[E]ven *pro se* plaintiffs asserting civil right[s] claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Jackson v. NYS Dep't of Labor,* 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly,* 550 U.S. at 555).

## D.   Williams' Claims Should Be Dismissed for Failure to Raise a Plausible Inference of Discriminatory Motivation

### 1.   Title VII

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating against an individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "[A]t the initial stage of the litigation . . . the plaintiff does not need substantial evidence of discriminatory intent. If [he]

17

makes a showing (1) that [he] is a member of a protected class, (2) that [he] was

qualified for the position [he] sought, (3) that [he] suffered an adverse employment

action, and (4) can sustain a *minimal* burden of showing facts suggesting an

inference of discriminatory motivation, then [he] has satisfied the prima facie

requirements and a presumption of discriminatory intent arises in [his] favor . . . ."

*Littlejohn*, 795 F.3d at 311; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801

F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse

action against [him] at least in part for a discriminatory reason, and [he] may do so

by alleging facts that directly show discrimination or facts that indirectly show

discrimination by giving rise to a plausible inference of discrimination.").

VSS has not contested that Williams adequately pled the first three elements

of an employment discrimination claim, but it has argued that he failed "to

plausibly allege that any actions VSS took toward him were motivated by his . . .

race." Def. Mem., at 11.[4] The Court agrees. Williams' complaint mentions race

---

[4] Although VSS has not contested the point, whether Williams suffered an adverse
employment action appears not to be plausibly alleged by the pleadings. In his
Amended Complaint, Williams alleges that he was hired by Elite for a position at
VSS. Am. Compl., ¶ 9. He does not allege that he was fired from Elite, only that he
was told he would no longer be working at VSS, and as a result, he suffered "mental
anguish and emotional distress." *Id.* ¶¶ 40, 54, 62, 66, 70, 74. It is thus not clear
whether Williams was terminated from all employment, or alternatively, continued
working for Elite in another capacity. "[A] plaintiff sustains an adverse
employment action if he or she endures a 'materially adverse change' in the terms
and conditions of employment.' A materially adverse change in working conditions
'must be more disruptive than a mere inconvenience or an alteration of job
responsibilities.'" *Raspardo v. Carlone*, 770 F.3d 97, 125–26 (2d Cir. 2014) (quoting
*Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). A job transfer
alone that does not materially alter the terms and conditions of a plaintiff's
employment is not an adverse employment action. *See, e.g., Tompkins v. Allied
Barton Sec. Servs.*, No. 09-CV-1954 (RMB) (JLC), 2010 WL 3582627, at *5 (S.D.N.Y.

18

only three times: when he describes himself as African American, Am. Compl., ¶ 9, when he describes Inron as Middle Eastern, *id.* ¶ 10, and in his claim that VSS violated his right "to be free from racial discrimination." *Id.* ¶ 53. Williams "does not allege the use of any ethnically degrading language or invidious comments . . . Nor does [he] provide any allegations that would justify an inference that certain facially neutral comments . . . were actually related to [his] protected characteristics." *Opoku v. Brega*, No. 15-CV-2213 (KMK), 2016 WL 5720807, at *8 (S.D.N.Y. Sept. 30, 2016); *see also Littlejohn*, 795 F.3d at 312 ("An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'") (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Additionally, Williams' allegations that he "was the only individual in leadership who had no adequate office space or cubicle," Am. Compl. ¶ 13, and that he was not informed of the impending visit by the owner and his executive team, *id.* ¶ 26, are insufficient to create an inference of disparate treatment. "A plaintiff relying on disparate treatment evidence 'must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare herself.'" *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v.*

---

Aug. 2, 2010), *adopted by* 2010 WL 3582621 (S.D.N.Y. Sept. 13, 2010), *aff'd*, 424 F. App'x 42 (2d Cir. 2011).

*Long Island R.R.,* 230 F.3d 34, 39 (2d Cir. 2000)). Despite Williams' claims that he was treated differently than others in leadership, he does not describe how he was treated in relation to others based on race. Williams thus cannot rely on disparate treatment allegations to create an inference of racially motivated discrimination.

### 2.   ADEA, NYSHRL, and NYCHRL

The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a). ADEA claims are analyzed under the same burden-shifting framework as Title VII claims. *See Doe v. Columbia Univ.,* 831 F.3d 46, 56 n.9 (2d Cir. 2016); *Valtchev v. City of N.Y.,* 400 F. App'x 586, 592 (2d Cir. 2010). Under the ADEA, however, a plaintiff "must prove that age was the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." *Yu v. N.Y. City Hous. Dev. Corp.,* 494 F. App'x 122, 124–25 (2d Cir. 2012) (internal alterations and quotation marks omitted); *see also Vega,* 801 F.3d at 86. "Claims of age-based discrimination under the NYSHRL are analyzed under the same standard as discrimination claims under the ADEA." *Szewczyk v. City of N.Y.,* No. 15-CV-918 (MKB), 2016 WL 3920216, at *8–9 (E.D.N.Y. July 14, 2016); *see also DiGirolamo v. MetLife Grp., Inc.,* 494 F. App'x 120, 122 (2d Cir. 2012). Finally, while the NYCHRL allows for a more liberal pleading standard, a plaintiff still must at least "allege facts giving rise to an inference of discrimination based on age to prevail." *Moore v. Verizon,* No. 13-CV-

20

6467 (RJS), 2016 WL 825001, at *8 (S.D.N.Y. Feb. 5, 2016) (citing *Gorzynski v. Jet Blue Airways Cop.,* 596 F.3d 93, 107 (2d Cir. 2010)).

In his Amended Complaint, Williams described himself as "over the age of 40," Am. Compl., ¶ 9; alleges that Inron "repeatedly" referred to himself as 36 and "getting old," *id.* ¶ 43; and alleges that he was replaced by someone under the age of 40. *Id.* ¶ 42. Additionally, Williams quoted Inron as stating that "the [VSS] culture and environment . . . presented a workforce dominated by 20–29 year old individuals." *Id.* ¶43. These comments contributed to Williams' belief that Inron considered the incident on April 17, 2014 to be "an opportunity to reject [him] because he was over 40 years old." Am. Compl., ¶ 43.

Statements such as Inron's alleged comments "may evince discriminatory motivation when a plaintiff shows that a nexus exists between the allegedly discriminatory statements and a defendant's decision to discharge the plaintiff." *Yan v. Ziba Mode Inc.*, No. 15-CV-47 (RJS), 2016 WL 1276456, at *4 (S.D.N.Y. Mar. 29, 2016) (internal quotation marks omitted). To determine whether a remark demonstrates discriminatory intent, courts weigh the following factors:

> (1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). "However, stray remarks, even if made by a decision maker, do not constitute sufficient evidence to

21

support a case of employment discrimination." *Moore*, 2016 WL 825001, at *8

(citing *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir. 1998)).

Inron's comments are fairly characterized as "stray remarks." Even

assuming that Inron was a decision maker, which is not clear from the Amended

Complaint, Williams did not describe the remarks as being linked to an employment

decision, nor are they likely to be viewed as discriminatory—particularly because

Inron was remarking on his own age. In addition, there is no information

describing the context of these comments, nor their proximity to Williams'

separation from VSS. Even cases where co-workers and supervisors make negative

remarks about an individual's attributes do not demonstrate the requisite

discriminatory intent where there is no "causal nexus" between the comments and

the decision to terminate the plaintiff. *See, e.g., Yan*, 2016 WL 1276456, at *4

(dismissing complaint alleging co-workers made critical comments regarding

plaintiff's accent); *Mesias v. Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431,

438 (S.D.N.Y. 2015); *Woodward v. TWC Media Sols., Inc.*, No. 09-CV-3000 (BSJ)

(AJP), 2011 WL 70386, at *7 (S.D.N.Y. Jan. 4, 2011).

Likewise, Williams' bare assertion that he was replaced by a younger person

is insufficient to create an inference of discriminatory intent. *See Adams v. N.Y.*

*State Educ. Dep't*, 752 F. Supp. 2d 420, 465–66 (S.D.N.Y. 2010) (age discrimination

claim insufficient as a matter of law where plaintiffs do not state who the teachers

were that replaced them or their age), *aff'd sub nom., Ebewo v. Fairman*, 460 F.

App'x 67 (2d Cir. 2012). An allegation by a plaintiff that "merely asserts that he

discovered that many entry level candidates selected or hired by Defendant were younger and less qualified than him," is "entirely conclusory, 'naked,' and 'devoid of further factual enhancement,'" and therefore is not entitled to a presumption that it is true. *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 315–16 (S.D.N.Y. 2015) (quoting *Iqbal,* 556 U.S. at 678) (internal alterations omitted). Williams has provided no details in his Amended Complaint about the allegedly younger employee who replaced him—including when the employee was hired, who hired the replacement, what the employee's age, experience, and qualifications were, and VSS's knowledge of the new employee's age. *See id.* at 316. "This general and unsubstantiated claim therefore requires dismissal, as [Williams] fails to allege any facts that would warrant the conclusion that [VSS's termination of] him occurred under circumstances from which a discriminatory motivation can be inferred." *Id.*

Williams' allegation that Inron considered Williams' termination "an opportunity to reject [him] because he was over 40 years old," Am. Compl., ¶ 43, similarly fails to pass muster. Williams' theory about Inron's intent is simply a conclusory statement, which the Court need not accept as true for purposes of a motion to dismiss. *Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). Additionally, the events leading up to Williams' separation from VSS indicate no age-based animus, as Williams instead described Inron only as dissatisfied with the time Williams spent in the break room. Am. Compl., ¶ 29. The

23

interactions described by Williams contain no indication of age discrimination, and therefore do not plausibly support even a minimal inference of discriminatory motive. *See, e.g., Opoku*, 2016 WL 5720807, at \*10; *Shah v. Motors Liquidation Co. GUC Trust*, No. 12-CV-8783 (JPO), 2013 WL 12085091, at \*5 (S.D.N.Y. June 3, 2013) ("[T]he mere fact that an employee is terminated does not raise an inference of discrimination, even where that employee is unfairly singled out or fired for no reason at all."), *aff'd sub nom., In re Motors Liquidation Co.*, 566 F. App'x 87 (2d Cir. 2014).

Although claims under the NYCHRL are to be read more liberally, Williams' NYCHRL claim should be dismissed on the same basis as his ADEA and NYSHRL claims. Under the NYCHRL, it is unlawful "[f]or an employer . . . because of the actual or perceived age, race, . . . gender . . . of any person, . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a). "[C]ourts must analyze NYCHRL claims separately and independently from any federal and state law claims," to determine whether the employer's conduct "is actionable under the broader New York City standards," even where it is not under federal and state law. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013); *see also Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) ("[C]laims under the [NYCHRL] must be reviewed independently from and 'more liberally' than their federal and state counterparts.") (citation omitted); *Carter v. Verizon*, No. 13-CV-7579 (KPF), 2015 WL 247344, at \*5

24

(S.D.N.Y. Jan. 20, 2015) ("*Mihalik* arose in the context of a summary judgment motion, but its principles have been extended by the Second Circuit to motions to dismiss, albeit in non-precedential decisions."). However, "even under NYCHRL's more liberal standard," a plaintiff must "plead facts giving rise to an inference that Plaintiffs['] termination was motivated by [age] discrimination." *Moore*, 2016 WL 825001, at \*7; *see also Carter*, 2015 WL 247344, at \*5 ("a plaintiff must only show differential treatment of any degree based on a discriminatory motive"). Thus, Williams' age discrimination claims under the NYCHRL should be dismissed for the same reasons as his claims under the ADEA and NYSHRL.

### E.   Williams' Section 1981 Claim Should Be Dismissed for Failure to State a Claim

Williams alleges that VSS discriminated against him on the basis of his age, in violation of 42 U.S.C. § 1981. Am. Compl., ¶¶ 64–67. Section 1981 guarantees that, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C.A. § 1981(a). "Although that statute never uses the word 'race,' the Supreme Court has construed it as forbidding 'racial' discrimination in public or private employment." *Vill. of Freeport v. Barrella*, 814 F.3d 594, 604 (2d Cir. 2016) (citation omitted). Discrimination on the basis of age is not addressed, as "Section 1981 solely prohibits discrimination on the basis of race and does not apply to gender, religion, national origin, or age discrimination." *Mazurkiewicz v. N.Y.C. Health & Hosps. Corp.*, No. 09-CV-5962 (WHP), 2010 WL 3958852, at \*4 (S.D.N.Y. Sept. 16, 2010) (citing *Anderson v. Conboy,* 156 F.3d 167, 170 (2d Cir. 1998)); *see*

25

also *Guzman v. Concavage Marine Constr. Inc.*, 176 F. Supp. 3d 330, 334 (S.D.N.Y. 2016); *Hyunmi Son v. Reina Bijoux, Inc.*, 823 F. Supp. 2d 238, 242 (S.D.N.Y. 2011) ("Only suits based on racial discrimination may be maintained under this statute.") (internal quotation marks omitted).

VSS argued that Williams' claim under Section 1981 should be dismissed because Section 1981 does not prohibit age discrimination. Def. Mem., at 10–11. Williams does not address this argument in his response. Although Williams is *pro se*, and therefore entitled to a generous reading of his claims, Section 1981 simply does not provide a basis for a claim for age discrimination. Williams' claim under Section 1981 should thus be dismissed.[5]

## F.    Williams Should Not Be Given Leave to Further Amend

Even though Williams has not requested permission to further amend his complaint, the Court would ordinarily recommend that a *pro se* plaintiff be given leave to amend his complaint to replead all factually insufficient claims. *See, e.g.*, *JCG v. Ercole,* No. 11-CV-6844 (CM) (JLC), 2014 WL 1630815, at \*35 (S.D.N.Y. Apr. 24, 2014) (district court generally should not dismiss *pro se* complaint without granting at least one opportunity to replead factually insufficient claims) (citing *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013)), *adopted by* No. 11–CV–6844 (CM) (JLC), 2014 WL 2769120 (S.D.N.Y. June 18, 2014). Here, however, Williams has already had the opportunity to amend his complaint once. Additionally, to the extent Williams' Memorandum of Law in Opposition to the

---

[5] Even if Williams intended to allege racial discrimination in violation of Section 1981, and not age discrimination, he has failed to do so, as previously described.

26

Motion to Dismiss supplemented his allegations in response to VSS's arguments, the Court has liberally construed the Memorandum to effectively amount to another pleading. *See Lang v. N.Y.C. Health and Hosps. Corp.,* No. 12-CV-5523 (WHP), 2013 WL 4774751, at \*4 (S.D.N.Y. Sept. 5, 2013) ("[C]ourts have construed allegations in *pro se* oppositions as motions to amend in view of the duty to construe *pro se* filings liberally.") (citing *Santiago v. Pressley,* No. 10-CV-4797 (PAE), 2011 WL 6748386, at \*5 (S.D.N.Y. Dec. 23, 2011)). Furthermore, the Court has reviewed Williams' complaint to the EEOC, which was attached to his original complaint (in the form of a letter), to assess whether it included any additional facts beyond what he has pled and it does not. Compl., at 5–6. Williams has essentially repeated the same core facts each time, which simply do not amount to actionable discrimination.

While the Court is sympathetic to the concerns Williams has raised in his case, federal law "does not guarantee a utopian workplace, or even or pleasant one . . . [and] [p]ersonality conflicts between employees are not the business of the federal courts." *Vore v. Indiana Bell Tel. Co.,* 32 F.3d 1161, 1162 (7th Cir. 1994) (to state cognizable Title VII claim, employer must tangibly discriminate against employee on basis of race; employee must point to actual racial mistreatment by employer); *see also Taylor v. Fed. Deposit Ins. Corp.,* 132 F.3d 753, 764 (D.C. Cir. 1997) ("[t]he federal courts cannot be wheeled into action for every workplace slight"). The court's role is "to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Byrnie v. Bd. of Educ.,* 243 F.3d 93, 103 (2d Cir. 2001); *see also Rojas v. Florida,* 285 F.3d 1339,

1342 (11th Cir. 2002) (federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether discriminatory animus motivates a challenged employment decision.").

Accordingly, because Williams has already had an opportunity to amend his complaint and any further attempt would be futile for the various reasons set forth in this Report, he should not be granted leave to further amend. *See, e.g., Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given."); *Best v. City of N.Y.*, No. 12-CV-7874 (RJS) (SN), 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014) (denying leave to amend where plaintiff had already been given two opportunities to do so, and noting that "the Court can only afford [Plaintiff] so many bites at the apple.").

## III.    CONCLUSION

For the foregoing reasons, the Court recommends that VSS's motion to dismiss the Amended Complaint be granted.

## PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections (plus three days because the Report is being mailed to Plaintiff). *See* Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Paul G. Gardephe and the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Gardephe.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: January 27, 2017
New York, New York

JAMES L. COTT
United States Magistrate Judge

**A copy of this Report and Recommendation has been mailed to:**

Robert Williams
P.O. Box 246
Bronx, New York 10467